UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

| | |
|---|---|
| TINA LOUISE HEATH, | ) |
| | ) |
| Plaintiff, | ) Case No. 1:17-cv-32 |
| | ) |
| v. | ) Honorable Janet T. Neff |
| | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

## REPORT AND RECOMMENDATION

This is a social security action brought under 42 U.S.C. §§ 405(g), 1383(c)(3), seeking review of a final decision of the Commissioner of Social Security finding that plaintiff was not entitled to disability insurance benefits (DIB) and supplemental security income (SSI) benefits. On October 22, 2013, plaintiff filed her applications for DIB and SSI benefits. Plaintiff alleged an August 31, 2011, onset of disability. (ECF No. 7-5, PageID.209-16). Plaintiff's claims were denied on initial review. (ECF No. 7-4, PageID.138-45). On April 16, 2015, she received a hearing before an ALJ. (ECF No. 7-2, PageID.66-117). On October 8, 2015, the ALJ issued his decision finding that plaintiff was not disabled. (Op., ECF No. 7-2, PageID.45-61). On November 30, 2016, the Appeals Council denied review (ECF No. 7-2, PageID.32-35), and the ALJ's decision became the Commissioner's final decision.

Plaintiff timely filed a complaint seeking judicial review of the Commissioner's decision. Plaintiff argues that the Commissioner's decision should be overturned on

the following grounds:

> I. The ALJ failed to give proper weight to the findings and opinion of plaintiff's treating physician, as required by 20 C.F.R §§ 404.1527(c), 416.927(c). Had he given Dr. Vega's opinions proper weight, plaintiff would have been limited to less than sedentary work and found disabled.
>
> II. The ALJ's findings regarding plaintiff's RFC are not supported by substantial evidence.
>
> > 1. The ALJ did not use the proper standards in addressing Dr. Vega's opinion or third party evidence from Amy Vincent, as required by 20 C.F.R. §§ 404.1527(c), 416.927(c), and SSR 06-3p.
> >
> > 2. The ALJ rejected all the medical opinions and there is no medical opinion that supports the RFC finding.
> >
> > 3. The ALJ impermissibly interpreted raw medical data in reaching his RFC findings.
> >
> > 4. The ALJ did not follow the applicable law when he addressed plaintiff's allegations of pain and his credibility findings are not supported by substantial evidence.

(Plf. Brief at iii, ECF No. 11, PageID.516). I recommend that the Commissioner's decision be affirmed.

## Standard of Review

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402

U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Ulman v. Commissioner*, 693 F.3d 709, 713 (6th Cir. 2012); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Gayheart v. Commissioner*, 710 F.3d 365, 374 (6th Cir. 2013) ("A reviewing court will affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would have supported the opposite conclusion."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Kyle v. Commissioner*, 609 F.3d 847, 854 (6th Cir. 2010).

## The ALJ's Decision

The ALJ found that plaintiff met the disability insured requirements of the Social Security Act through December 31, 2016. (Op. at 3, ECF No. 7-2, PageID.47). Plaintiff had not engaged in substantial gainful activity on or after August 31, 2011, the alleged onset date. (*Id.*). Plaintiff had the following severe impairments: "Type II diabetes mellitus without complication, polyarthritic arthralgias, rheumatoid arthritis, tenosynovitis, status post-stroke with mild residuals of right sided weakness, obesity, and depression." (*Id.*). Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of a listing impairment. The ALJ found that plaintiff retained the residual functional capacity (RFC) for a range of light work with the following exceptions:

> she can perform occasional climbing and balancing. She is limited to frequent handling, fingering, pushing and pulling with the upper extremities. She is limited to simple work. She would not be able to do any fast-paced work.

(Op. at 7, PageID.51). The ALJ found that plaintiff's testimony regarding her subjective limitations was not fully credible. (*Id.* at 7-13, PageID.51-57). Plaintiff could not perform any past relevant work. (*Id.* at 15, PageID.59).

The ALJ considered the testimony of a vocational expert (VE). In response to a hypothetical question regarding a person of plaintiff's age with her RFC, education, and work experience, the VE testified that there were approximately 52,000 jobs that exist in the Michigan economy that the hypothetical person would be capable of performing. (ECF No. 7-2, PageID.110-11). The ALJ found that this constituted a significant number of jobs and found that plaintiff was not disabled. (Op. at 16-17,

PageID.60-61).

## Discussion

### 1.

Plaintiff argues that the ALJ failed to give proper weight to the findings and opinion of Louis Vega, M.D., a treating physician, and that the ALJ did not use proper standards in addressing the opinions of Dr. Vega and Ms. Amy Vincent as required by 20 C.F.R. §§ 404.1527(c), 416.927(c) and SSR 06-3p. (Plf. Brief at iii, 8-14, ECF No. 11, PageID.516, 526-32; Reply Brief at 2-3, ECF No. 13, PageID.556-57). Upon review, I find no error.

Generally, the medical opinions of treating physicians are given substantial, if not controlling deference. *See Johnson v. Commissioner*, 652 F.3d 646, 651 (6th Cir. 2011). "[T]he opinion of a treating physician does not receive controlling weight merely by virtue of the fact that it is from a treating physician. Rather, it is accorded controlling weight where it is 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and is not 'inconsistent ... with the other substantial evidence in the case record.'" *Massey v. Commissioner*, 409 F. App'x 917, 921 (6th Cir. 2011) (quoting *Blakley v. Commissioner*, 581 F.3d 399, 406 (6th Cir. 2009)). A treating physician's opinion is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c); *see Gayheart v. Commissioner*, 710 F.3d 365, 376 (6th Cir. 2013).

The ALJ is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Buxton v. Halter*, 246 F.3d at 773. An opinion that is based solely on the claimant's reporting of her symptoms is not entitled to controlling weight. *See Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir.1990); *see also Kepke v. Commissioner*, 636 F. App'x 625, 629 (6th Cir. 2016) ("[A] a doctor cannot simply report what his patient says and re-package it as an opinion."); *Francis v. Commissioner*, 414 F. App'x 802, 804 (6th Cir. 2011) (A physician's statement that merely regurgitates a claimant's self-described symptoms "is not a medical opinion at all.").

Even when a treating source's medical opinion is not given controlling weight, it should not necessarily be completely rejected; the weight to be given to the opinion is determined by a set of factors, including treatment relationship, supportability, consistency, specialization, and other factors. *See Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions*, SSR 96-2p (reprinted at 1996 WL 374188 (SSA July 2, 1996)); 20 C.F.R. § 404.1527(c); *Martin v. Commissioner*, 170 F. App'x 369, 372 (6th Cir. 2006).

Moreover, the Sixth Circuit has held that claimants are "entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Commissioner*, 482 F.3d 873, 875-76 (6th Cir. 2007); *see Gayheart v. Commissioner*, 710 F.3d at 376; *Cole v. Astrue*, 661 F.3d at 937-38; *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). The reasons must be "supported by the evidence in the case record, and must be

sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reasons for that weight." SSR 96-2p, 1996 WL 374188 at *5; *see Gayheart v. Commissioner*, 710 F.3d at 376. This procedural requirement exists, in part, so that claimants "understand why the administrative bureaucracy deems them not disabled when physicians are telling them that they are." *Smith v. Commissioner*, 482 F.3d at 876; *see also Gayheart v. Commissioner*, 710 F.3d at 376 ("This procedural requirement 'ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.'" (quoting *Wilson v. Commissioner*, 378 F.3d at 544)).

### A. Medical Evidence from Plaintiff's Alleged Onset of Disability through Her Administrative Hearing

The ALJ noted that, although plaintiff claimed an August 31, 2011, onset of disability, the earliest medical records she submitted in support of her claims for DIB and SSI benefits were from 2012. (Op. at 13, ECF No. 7-2, PageID.57). In late April 2012, plaintiff received treatment for cellulitis on the left side of her abdomen and an abscess. (ECF No. 7-7, PageID.320-22). On May 1, 2012, Yazdi Amaria, M.D., treated plaintiff's abdominal abscess and he expected it to heal in two to three weeks. Dr. Amaria emphasized that plaintiff "need[ed] to get her diabetes controlled, her weight reduced and refrain from smoking." (*Id.* at PageID.323).

"In November 2012, [plaintiff] presented with good strength and range of motion in all extremities with normal reflexes as well as no redness, warmth, deformities, or deficits in motor or sensory function." (Op. at 9, ECF No. 7-2,

PageID.53) (citing Exhibit 1F/20-21, found at ECF No. 7-7, PageID.315-16).

On September 13, 2013, plaintiff was in good general health. She stated that Tramadol was not working for her arthritis and she wanted something stronger. Plaintiff reported no side effects from any of her medications. She had no headaches, no weakness, no difficulty walking and no memory problems. Plaintiff received an adjustment in her medication. She also received counseling regarding her diabetes and the short and long term benefits of smoking cessation. (ECF No. 7-7, PageID.301-04). On October 11, 2013, plaintiff was in good general health. She had no side effects from medications. She received counseling regarding her diet. (*Id.* at PageID.297-300).

On April 15, 2014, R. Scott Lazzara, M.D., performed a consultative medical examination. (ECF No. 7-7, PageID.328-35). Plaintiff's grip strength was normal and she had unimpaired dexterity. Her motor strength was intact and her muscle tone was normal. She had mild difficulty heel and toe walking, squatting, and hopping. She had a reduced range of motion in her right arm. (*Id.*). Plaintiff walked without an assistive device. The ALJ noted that Dr. Lazzara gave differing accounts of plaintiff's gait. He indicated on one form that it included mild lurching, but in his narrative report described it as normal. (Op. at 9, ECF No. 7-2, PageID.53).

On May 12, 2014, plaintiff's chief complaint was that she wanted to talk about disability. She reported to Jonathon Schumaker, M.D., that she was frustrated that she had been turned down for disability. Plaintiff received a prednisone prescription to address her joint pain and swelling. (ECF No. 7-8, PageID.377-80). On

-8-

September 29, 2014, plaintiff returned to Dr. Schumaker and her chief complaint was discussing disability. Plaintiff continued to have pain and swelling in her joints. Dr. Schumaker referred her to a rheumatologist. (*Id.* at PageID.369-372)

On October 7, 2014, plaintiff suffered a stroke. She was treated at Borgess Medical Center and discharged on October 12, 2014. (ECF No. 7-7, PageID.353-58; ECF No. 7-9, PageID.415-49). Plaintiff underwent a successful mechanical thrombectomy and revascularization of the left carotid artery, angioplasty and stenting. (*Id.* at PageID.427). Plaintiff's discharge summary emphasized that she needed to take her medications every day and stop smoking. (ECF No. 7-7, PageID.358).

On November 20, 2014, plaintiff was examined by a neurologist, Atul Mangia, M.D. (ECF No. 7-9, PageID.472-76). Plaintiff related that she had "recovered quite well and [could] do most things now." She was taking her medication, had nearly quit smoking, and was participating in outpatient speech, physical and occupational therapy, and was exercising at home. (*Id.* at PageID.472). Plaintiff retained normal strength on her left side. She had mild right hemiparesis. Her coordination was intact. Her gait was narrow, but no unsteadiness was observed. (*Id.* at PageID.475).

On January 11, 2015, Louis Vega, M.D., began treating plaintiff. Dr. Vega found that plaintiff was alert and oriented. She had no neurological deficits. Plaintiff complained of joint pain. Plaintiff requested and she received a referral to a rheumatologist, Satish Solanski, M.D. (ECF No. 7-8, PageID.365-67).

On January 30, 2015, Dr. Solanski began treating plaintiff. He described

plaintiff's gait as relatively normal. A joint inspection of plaintiff's upper and lower extremities revealed Heberden nodes on both hands, but was otherwise unremarkable. Plaintiff's grip strength was normal in both hands. Her muscle power revealed a slight weakness in her right upper and lower extremities. Plaintiff had a slightly reduced range of motion in her right shoulder. Dr. Solanski found no abnormal joint effusion or significant abnormalities. He ordered a battery of tests. (ECF No. 7-7, PageID.345-37). The ALJ noted that the February 2015 x-rays of plaintiff's hands showed "moderate degenerative changes and periarticular spurring at the second distal phalangeal joint of the right upper extremity, but with otherwise mild degenerative changes of the bilateral hands." (Op. at 9, ECF No. 7-2, PageID.53) (citing Exhibit 5F/26-27, found at ECF No. 7-8, PageID.385-86). The x-rays of plaintiff's right shoulder showed calcification near the greater tuberosity suggesting calcific tendinitis. There was no acute fracture or dislocation. There was "mild a.c. joint arthropathy." (ECF No. 7-8, PageID.381-82). The x-rays of plaintiff's knees were "unremarkable." (*Id.* at PageID.383-84).

On March 16, 2015, plaintiff returned to Dr. Solanski. He found that plaintiff was in no distress. Her coordination was normal. Dr. Solanski offered a diagnosis of rheumatoid arthritis, tendonitis of the right shoulder and ulnar neuropathy of the right wrist. He prescribed methotrexate and folic acid for her rheumatoid arthritis and referred her to a neurologist for her ulnar neuropathy. (ECF No. 7-7, PageID.339-41).

On April 7, 2015, plaintiff returned to Dr. Vega. Her primary complaint was

-10-

left elbow pain. Plaintiff was in no acute distress. She was alert and oriented. She had no complaints of dizziness or lightheadedness. She had no complaints of shortness of breath. Plaintiff was advised to keep her upcoming appointment with her rheumatologist and to continue taking her pain medications. (*Id.* ECF No. 7-8, PageID.360-64).

On April 14, 2015, Dr. Solanski conducted a follow-up examination. Plaintiff complained of peripheral joint pain. Dr. Solanski found that plaintiff was in no distress. Her gait was normal and she did not use an assistive device. Her muscle power was normal with no focal muscular atrophy. Plaintiff had synovitis in her left elbow and wrist. There was no joint effusion or deformities in plaintiff's upper or lower extremity joints. Dr. Solanski increased plaintiff's methotrexate prescription and added a prescription for prednisone. (*Id.* at PageID.403-06).

On April 16, 2015, plaintiff received her administrative hearing before the ALJ. (ECF No. 7-2, PageID.66-117).

B. <u>Medical Evidence Generated After Plaintiff's Hearing</u>

On April 21, 2015, plaintiff returned to Dr. Vega. She was alert and oriented. She had no neurologic deficits and her motor activity remained intact. Dr. Vega's assessment of plaintiff's condition was rheumatoid arthritis, type II diabetes mellitus, tobacco abuse, and hyperlipidemia. He declined to complete an evaluation of plaintiff's ability to do work related activities, but he did provide a referral for such an evaluation. (ECF No. 7-9, PageID.460-61).

On May 12, 2015, plaintiff reported to Dr. Vega that she was experiencing left

elbow pain. Plaintiff was not in any acute distress and she was alert and oriented. She had no sensory deficits and her motor activity was intact. Dr. Vega treated plaintiff's complaint of left elbow pain with a Kenalog injection   (ECF No. 7-9, PageID.451-54).

On May 20, 2015, Ms. Amy Vincent, an occupational therapist at The Therapy Place, LLC, performed a functional capacity evaluation. (ECF No. 7-9, PageID.462-70). This was an evaluation of plaintiff's condition as of May 20, 2015, and no opinion was expressed regarding plaintiff's functional limitations at any earlier date. (*Id.* at 462). Ms. Vincent offered her opinion that plaintiff was only capable of performing sedentary work and was limited to performing only four hours of work per day. (*Id.*).

On July 7, 2015, Dr. Vega gave a two-page sworn statement to plaintiff's attorney. (ECF No. 7-9, PageID.477-78). He indicated that he generally agreed with the functional capacity evaluation completed by The Therapy Place. (*Id.* at PageID.477). He agreed with an opinion that plaintiff would be limited to sedentary work and could only perform four hours of work per day. (*Id.* at PageID.478).

C. Analysis of the Weight the ALJ Gave to the Opinion Evidence

   1. Ms. Vincent

Therapists are not "acceptable medical sources." *See* 20 C.F.R. §§ 404.1513(a), (d)(1), 416.913(a), (d)(1). The opinions of therapists are not entitled to any particular weight. Only "acceptable medical sources" can: (1) provide evidence establishing the existence of a medically determinable impairment; (2) provide a medical opinion; and (3) be considered a treating source whose medical opinion could be entitled to

controlling weight under the treating physician rule.  *See Titles II and XVI: Considering Opinions and Other Evidence from Sources Who are not 'Acceptable Medical Sources' in Disability Claims; Considering Decisions on Disability by Other Governmental and Nongovernmental Agencies*, SSR 06-3p (reprinted at 2006 WL 2329939, at *2 (SSA Aug. 9, 2006)).  The opinions of therapists fall within the category of information provided by "other sources."  *See* 20 C.F.R. §§ 404.1513(d), 416.913(d).  The social security regulations require that information from other sources be "considered."  2006 WL 2329939, at *3 (citing 20 C.F.R. §§ 404.1513, 416.913); *Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011); *Cruse v. Commissioner*, 502 F.3d 532, 541 (6th Cir. 2007).  This is not a demanding standard.  It was easily met here.

      The ALJ considered this evidence, but did not find it to be persuasive.  The ALJ noted that Ms. Vincent is not an acceptable medical source under SSR 06-3p.  Her assessment was not well supported by plaintiff's treatment records.  Further, the assessment "was solicited and performed after the hearing was held."  (Op. at 14, ECF No. 7-2, PageID.58).  The assessment had not been performed in connection with seeking medical treatment, but rather had been performed in order to generate evidence in support of plaintiff's claims for DIB and SSI benefits.  (*Id.*).  The ALJ did not reject Ms. Vincent's opinion because it was made on a referral from plaintiff's attorney or Dr. Vega.  It was appropriate for the ALJ to consider that plaintiff had been seen on a referral made for the purpose of generating evidence in support of her claims for DIB and SSI benefits, rather than for the purpose of medical treatment.  *See Meerman v. Commissioner*, No. 1:15-cv-626, 2016 WL 3536670, at *4 (W.D. Mich.

June 29, 2016); *Perreault v. Commissioner*, No. 1:14-cv-942, 2015 WL 5592931, at *5 (W.D. Mich. Sept. 22, 2015).

I find no error in the ALJ's consideration of Ms. Vincent's opinions and his determination that they were entitled to little weight is supported by substantial evidence.

### 2. Dr. Vega

The ALJ considered Dr. Vega's July 7, 2015, sworn statement in which he indicated general agreement with the RFC completed by The Therapy Place. (*See* Op. at 14-15, ECF No. 7-2, PageID.58-59). The ALJ afforded this opinion little weight for the following reasons:

> Although Dr. Vega had the opportunity to examine the claimant, his own treatment records do not support this assessment, and it is not well supported by the claimant's other treatment records, including those from her rheumatologist (1F, 3F-8F and 10F). For example, x-ray imaging has demonstrated no more than moderate findings (2F/3 and 5F/22-26). Additionally, during her most recent rheumatology evaluation in April 2015, approximately one month prior to the functional capacity evaluation, the claimant had normal coordination, normal muscle power with no atrophy, no joint abnormalities or deformities, and normal gait with no use of an assistive device (6F/5). The assessment on which this opinion is based was performed in connection with an effort to generate evidence for the current appeal. Although such evidence is certainly legitimate and deserves due consideration, the context in which it was produced cannot be entirely ignored.

(*Id.*).

Dr. Vega's opinion regarding plaintiff's RFC was not entitled to controlling weight. RFC is an administrative finding of fact reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *see Deaton v. Commissioner*, 315 F. App'x 595, 598 (6th Cir. 2009). A treating physician's opinion on an issue reserved to the

Commissioner is not entitled to "any special significance." 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3); *see Edwards v. Commissioner*, 636 F. App'x 645, 649 (6th Cir. 2016) ('[T]he regulations make clear that no special significance is to be given to the source of an opinion on issues that are reserved to the Commissioner[.]").

There is substantial evidence supporting the ALJ's finding that the level of restriction suggested by Dr. Vega is not supported by his own treatment notes and the other evidence of record. I find no violation of any aspect of the treating physician rule.

**2.**

Plaintiff argues that the ALJ's RFC finding is not supported by substantial evidence because there is no medical opinion that supports the RFC finding and the ALJ impermissibly interpreted raw medical data in reaching his RFC findings. (Plf. Brief at iii, 14-16, ECF No. 11, PageID.516, 532-34; Reply Brief at 3-5, ECF No. 13, PageID.557-59).

As noted above, an RFC determination is an administrative finding of fact reserved to the Commissioner. While the RFC determination is made by the ALJ, an ALJ's RFC determination must be supported by substantial evidence. *Torres v. Commissioner*, 490 F. App'x 748, 754 (6th Cir. 2012). If the record contains "conflicting evidence that would suggest further limitations, under the substantial evidence standard, administrative findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion." *Id.*

Plaintiff bears the ultimate burden of producing sufficient evidence to show

that she is disabled. *See Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993); *see also Montecalvo v. Commissioner*, 695 F. App'x 124, 127 (6th Cir. 2017) (The plaintiff's burden "includes supplying medical evidence that substantiates the claim of disability."). An argument that "the ALJ's RFC [finding] lacks substantial evidence because no physician opined that [plaintiff] was capable of [such] work" does not provide a basis for disturbing the Commissioner's decision. *Shepard v. Commissioner*, 705 F. App'x 435, 442-43 (6th Cir. 2017). "The ALJ is charged with the responsibility of determining the RFC based on h[is] evaluation of the medical and non-medical evidence." *Rudd v. Commissioner*, 531 F. App'x 719, 728 (6th Cir. 2013).

"[T]o require the ALJ to base h[is] RFC on a physician's opinion, would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability.'" *Shepard v. Commissioner*, 705 F. App'x at 442-43 (quoting *Rudd*, 531 F. App'x.at 728). The ALJ did not improperly substitute his "own medical judgment" for that of any medical expert or interpret raw medical data beyond his ability by making a RFC determination. *See Rudd*, 531 F. App'x at 726-27.

The ALJ gave an adequate explanation and his findings regarding plaintiff's RFC are supported by substantial evidence.

### 3.

Plaintiff argues that the ALJ failed to follow the applicable law when he addressed plaintiff's allegations of pain, and his credibility findings are not supported

by substantial evidence. (Plf. Brief at iii, 16-18, ECF No. 11, PageID.516, 534-36).

Credibility determinations concerning a claimant's subjective complaints are peculiarly within the province of the ALJ. *See Gooch v. Secretary of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). The Court does not make its own credibility determinations. *See Walters v. Commissioner*, 127 F.3d at 528. The Court's "review of a decision of the Commissioner of Social Security, made through an administrative law judge, is extremely circumscribed[.]" *Kuhn v. Commissioner*, 124 F. App'x 943, 945 (6th Cir. 2005). The Commissioner's determination regarding the credibility of a claimant's subjective complaints is reviewed under the "substantial evidence" standard. This is a "highly deferential standard of review." *Ulman v. Commissioner*, 693 F.3d 709, 714 (6th Cir. 2012). "Claimants challenging the ALJ's credibility determination face an uphill battle." *Daniels v. Commissioner*, 152 F. App'x 485, 488 (6th Cir. 2005); *see Ritchie v. Commissioner*, 540 F. App'x 508, 511 (6th Cir. 2013) ("We have held that an administrative law judge's credibility findings are 'virtually unchallengeable.' "). "Upon review, [the court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying." *Jones*, 336 F.3d at 476. "The ALJ's findings as to a claimant's credibility are entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge h[is] subjective complaints." *Buxton v. Halter*, 246 F.3d at 773; *accord White v. Commissioner*, 572 F.3d 272, 287 (6th Cir. 2009); *Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993).

The Sixth Circuit recognizes that meaningful appellate review requires more than a blanket assertion by an ALJ that "the claimant is not believable." *Rogers v. Commissioner*, 486 F.3d 234, 248 (6th Cir. 2007). The *Rogers* court observed that Social Security Ruling 96-7p requires that the ALJ explain his credibility determination and that the explanation "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Rogers*, 486 F.3d at 248.

The ALJ gave a lengthy and detailed explanation of his factual findings regarding plaintiff's credibility and his findings are supported by more than substantial evidence. (Op. at 7-13, ECF No. 7-2, PageID.51-57).

Plaintiff argues that the ALJ committed error in making his credibility finding because he rejected plaintiff's testimony regarding the intensity and persistence of her pain and other symptoms solely based on the lack of supporting objective evidence. (Plf. Brief at 16-18, ECF No. 11, PageID.534-36). This argument cannot withstand scrutiny. The ALJ found that plaintiff's testimony was not fully credible for a number of reasons. (Op. at 7-13, ECF No. 7-2, PageID.51-57). For example, he noted that plaintiff's application for, and receipt of, unemployment benefits was inconsistent with her claim of disability and undercut her credibility. (*Id.* at 12, PageID.56). This was an appropriate consideration. *See Nettleman v. Commissioner*, No. 17-1443, __ F. App'x __, 2018 WL 862533, at *2 (6th Cir. Feb. 14. 2018) ("The ALJ was permitted to consider unemployment benefits as one of several factors in evaluating the credibility of [plaintiff's] allegations.").

Plaintiff criticizes the ALJ's consideration of her daily activities. (Plf. Brief at 16-17, ECF No. 11, PageID.534-35). It was appropriate for the ALJ to take plaintiff's daily activities into account in making his credibility determination. *See Cruse v. Commissioner*, 502 F.3d 532, 542 (6th Cir. 2007); *Blacha v. Secretary of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). "[T]he ALJ did not equate Plaintiff's ability to engage in these activities with the ability to perform full time work, but rather found them inconsistent with the severity of [her] allegations. It was entirely appropriate for the ALJ to do so." *Sanborn v. Commissioner*, 1:16-cv-41, 2016 WL 5859054, at *5 (W.D. Mich. Oct. 7, 2016).

## **Recommended Disposition**

For the reasons set forth herein, I recommend that the Commissioner's decision be affirmed.

Dated:   February 28, 2018            /s/  Phillip J. Green
                                      PHILLIP J. GREEN
                                      United States Magistrate Judge

## **NOTICE TO PARTIES**

ANY OBJECTIONS to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008). General objections do not suffice. *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).